IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States Courts
Southern District of Texas
ENTERED

APR 2 7 2005

Michael N. Milby, Clerk of Court

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff-Respondent, | § | |
| | § | |
| V. | § | CRIMINAL ACTION NO. H-95-142-20 |
| | § | CIVIL ACTION NO. H-03-3879 |
| ZARAGOSA SANDOVAL, | § | |
| | § | |
| Defendant-Movant | § | |

**MEMORANDUM AND RECOMMENDATION GRANTING
RESPONDENT'S MOTION TO DISMISS AND DENYING
MOVANT'S § 2255 MOTION TO VACATE, SET ASIDE
OR CORRECT SENTENCE AND MOTION FOR LEAVE
TO AMEND/SUPPLEMENT § 2255 MOTION**

Before the Magistrate Judge in this federal habeas corpus proceeding pursuant to 28 U.S.C.

§ 2255 is Movant Zaragosa Sandoval's § 2255 Motion to Vacate, Set Aside or Correct Sentence

(Document No. 5197),[1] the United States's Answer and Motion to Dismiss (Document No. 5225),

Movant's Response to the Government's Motion to Dismiss (Document No. 5235), Movant's

Motion for Leave to Amend/Supplement § 2255 Motion (Document No. 5425), and Memorandum

in Support of Motion for Leave to Amend/Supplement § 2255 (Document No. 5426), and the

Government's Response to Movant's Motion for Leave to Amend/Supplement § 2255 Motion

(Document No. 5422).  After reviewing the parties' submissions, the record of the proceedings

before the District Court in the underlying criminal case and on appeal, and the applicable case

---

[1] Zaragosa Sandoval's  Motion to Vacate, Set Aside or Correct Sentence can be found at
Document No. 1 in Civil Action H-03-3879 and at Document No. 5197 in Criminal Action No.
H-95-142.  References hereafter will be to the Criminal Document numbers unless otherwise
indicated.

law, the Magistrate Judge RECOMMENDS, for the reasons set forth below, that the Government's Motion to Dismiss (Document No. 5235) be GRANTED, that Movant's Motion for Leave to Amend/Supplement § 2255 Motion (Document No. 5425) be DENIED as futile, that Movant's § 2255 Motion to Vacate, Set Aside, or Correct Sentence (Document No. 5197) be DENIED, and that this § 2255 proceeding be DISMISSED as time barred.


I.      **Procedural History**

Movant Zaragosa Sandoval ("Sandoval"), who is currently in the custody of the United States Bureau of Prisons, is seeking federal habeas corpus relief under 28 U.S.C. § 2255.  This is Sandoval's first attempt at § 2255 relief.

On October 10, 1996, Sandoval and seventy-eight co-defendants were charged in a 196 count sixth superseding Indictment, which arose out of a drug-trafficking organization headquartered in Starr County, Texas.  (Document No. 19).  The superceding indictment charged various defendants with narcotics distribution, money laundering, conspiracy to evade currency reporting requirements, failure to file tax forms, aiding and abetting the use of a communication facility, aiding and abetting travel in foreign and interstate commerce, conspiracy to travel in aid of a racketeering enterprise, conspiracy to obstruct justice, obstruction of justice, and continuing criminal enterprise.  Sandoval, in particular, was charged with conspiracy to possess with intent to distribute 1,000 kilograms or more of marijuana in violation of 21 U.S.C. § 841(a)(1), 841(b)(1)(A) and 846 (count one); conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(g) and (h) (count 5), money laundering in violation of 18 U.S.C. § 1956(a)(1)(A) (counts 32, 120-123), and possession with intent to distribute 1000 kilograms or more of

marijuana in violation of 21 U.S.C. § 841(b)(1)(B) (count 130).[2]  Sandoval pled guilty, pursuant to a written Plea Agreement, to count 130.  Under the written Rule 11(e)(1)(B) Plea Agreement, Sandoval waived his right to appeal, and agreed to cooperate with the Government concerning assets subject to forfeiture by the Government.  The Government, in exchange for Sandoval's plea, agreed to dismiss the remaining counts against Sandoval at sentencing, recommend a sentence at the bottom of the applicable guideline range, not to oppose a 3 level reduction in Sandoval's adjusted base offense level for acceptance of responsibility if recommend by the probation office, and not to prosecute Sandoval in the Southern District of Texas for offenses committed prior to the entry of the plea agreement except for perjury, false statements, obstruction of justice and crimes of violence. Also, with respect to the calculation of Sandoval's sentence, the Plea Agreement states:

> 8.  The defendant is aware that his sentence will be imposed in accordance with the *Sentencing Guidelines and Policy Statements*. The defendant nonetheless acknowledges and agrees that the Court has jurisdiction and authority to impose any sentence within the statutory maximum set for the offenses to which the defendant pleads guilty.  The defendant understands that the sentence to be imposed is discretionary with the sentencing judge and further understands that if the judge imposes a sentence up to the maximum established by statute, the defendant cannot for that reason alone, withdraw his guilty plea and will remain bound by all the obligations of this agreement.  (Document No. 2979).

At Sandoval's Rearraignment hearing, the Court engaged in an extended colloquy to ensure that Sandoval understood the charges against him, the maximum penalties, the rights he was waiving, and the factual basis of the plea.  (Document No. 3985, Transcript of Rearraignment

---

[2] The statutory penalty for possession with intent to distribute marijuana in violation of U.S.C. § 841(b)(1)(B) is a minimum of 5 years to 40 years imprisonment, at least 4 years of supervised release, up to a $2,000,000 fine and $50 special assessment.

Hearing, held July 15, 1998, pp. 11-13, 17, 20-24). In particular, with respect to Sandoval's understanding of the plea agreement, and the calculation of Sandoval's sentence, the following exchange took place between Sandoval and the Court:

> The Court: Have each of you actually read the Plea Agreement or had it read to you?
>
> Defendant: Yes, Your Honor.
>
>        *       *       *
>
> The Court: Do each of your feel like you understand fully the terms of the written plea agreement?
>
> Defendant: Yes, Your Honor.
>
>        *       *       *
>
> The Court: Okay. I want to talk about now what you're facing as the maximum possible penalties as a result of your pleas of guilty this afternoon.
>
> Mr. Sandoval, you are pleading guilty to count 130, which is a drug conspiracy count, and the penalty for that is imprisonment for a minimum mandatory of five years and up to 40 years, and/or a fine of up to $2 million. There's also at least four years supervised release and a $100 special assessment.
>
>        *       *       *
>
> The Court: So do each of you understand that the prison term I've just talked to each of you about, the supervised release with the conditions of supervised release, fine, and the special assessment, those are the maximum possible penalties you're facing as a result of your plea of guilty this afternoon?
>
> Defendant: Yes, Your Honor.
>
>        *       *       *
>
> The Court: Under the Sentencing Reform Act of 1984, the United States Sentencing Commission has issued guidelines for judges to follow to determine what the sentence will be in a criminal case. Have each of you discussed with your respective attorneys how those sentencing guidelines will apply in your case?

4

Mr. Sandoval, have you discussed that with Mr. Courtney?

Defendant:  Yes, Ma'am.

                  *                *                *

The Court:  And do each of you understand that I have no idea now what your sentence will be and I will not have any idea what your sentence will be until after a probation officer has made a presentence investigation and has written a written report and I have looked at that report.  Each of you will be given a copy of the report, so will the Government, and all of you will be given an opportunity to file any objections you may have to the presentence report.   We'll then have a sentencing hearing.  At that hearing I will rule on and –  I'll rule on the objections that you've made to the report or the Government's made to the report.  I will rule on any motions that the Government may make pursuant to your plea agreement.  I may rule  —I will rule on any recommendations that the Government may make pursuant to your plea agreement.  And I will consider and rule upon any other matters that might come up during your sentencing hearing.

At that point, I will be in a position to determine what your guidelines are, whether the guidelines apply to your case, and what your sentence will be.

And do each of you understand that it may be that if the sentence that I impose is more severe than the sentence that you and your attorneys may have estimated you're going to get when you were discussing how the guidelines may apply, and if it turns out that the sentence I impose is more severe than the one you are expecting today, that you will not be given an opportunity or allowed to withdraw your plea of guilty at the time of sentencing.

Do you understand that, Mr. Sandoval?

Defendant:  Yes, Your Honor.

                  *                *                *

The Court:  And, Mr. Sandoval, do you understand that by entering into this written Plea Agreement this afternoon, that you will have waived or given up your right to appeal any sentence that I impose as it's set forth in your written Plea Agreement.

Do you understand that?

Defendant:  Yes, Your Honor.

        \*        \*        \*

The Court:  All right.  Mr. Clark, would you tell me what it is the Government is prepared to prove against Mr. Sandoval … if we went to trial in this case.

Mr. Clark:  Yes, Your Honor.  Through use of court-authorized intercepts, confidential sources, undercover agents, surveillance search warrants, seizures and codefendant's testimony, it was determined that an organization existed in the Rio Grande Valley area of the Moreno and Riojas family that engaged in the importation of marijuana in the Starr County area of Texas, more particularly Roma, for transportation to Houston and through other spots throughout the country.

During the course of the conspiracy more than 1,000 kilograms of marijuana was imported and distributed and the money from the sales of marijuana was again returned to the valley area and those involved in the conspiracy and all the codefendants.

They used vehicles with false compartments and with hidden disguises posing as like pool trucks or oil company trucks.  They also, if individuals got in trouble, they would help by providing attorneys and providing bonds, and so forth.

   \*      \*      \*

As to Mr. Sandoval, as in count 130, basically, this was one of the loads of marijuana the organization was doing and his role basically in that was basically a loader of the marijuana.

   \*      \*      \*

The Court:  All right.  Mr. Sandoval, would you tell me what it is that you did, in violation of count 130.

Defendant:  Load the Truck.

The Court:  Sorry?

Defendant:  Load the truck.

The Court:  Load the truck with what?

Defendant:  Marijuana.

6

The Court:  With marijuana?

Defendant:  Yes, Ma'am.

The Court:  Okay.  Pretty much the way Mr. Clark has recited to me he could prove?

Defendant:  Yes, Your Honor.  (Tr. 23-24).  (Transcript of July 15, 1998, Rearraignment Hearing, Document No. 3985, pp. 8, 12-17, 22-24)

Prior to sentencing, a Pre-sentence Investigation Report ("PSR") was prepared (Document No. 4422, and Second Addendum, Document No. 4442), to which Sandoval filed written objections.[3]  (Document No. 4390, 4448, 4449).  Pursuant to the PSR, Sandoval's sentence was calculated as follows:  (1) In calculating Sandoval's base offense level, because Sandoval pleaded guilty to a violation of 21 U.S.C. § 841(b)(1)(B), and because the amount of marijuana attributed to Sandoval was 45,360 kilograms, under U.S.S.G. § 2D1.1(c)(1), Sandoval had a base offense level of 38.  (2) With a base offense level of 38, and with a criminal history category of II, Sandoval had a guideline sentencing range of 262 to 327 months.  (Document No. 4422).

Prior to sentencing, Sandoval filed a Motion to Withdraw Plea of Guilty with Attached Memorandum in Support (Document No. 4391), in which he sought to withdraw his guilty plea. According to Sandoval, when he entered his guilty plea to count 130, the amount of marijuana

---

[3] Sandoval objected to the sections of the PSR which addressed the relevant conduct enhancement, pp. 9-40, paragraphs 20-22, 24-25, 27, 30, 32-36, 40-48, 50-54, 64-77, 79-80, 82-84, 90, 110, 113 and 115.  According to Sandoval, the PSR overstated the amount of marijuana involved.  In addition, Sandoval argued that under *Apprendi v. New Jersey,* 530 U.S. 466 (2000), because there was no finding as to drug quantities, that he should be held accountable for the 466.7 pounds of marijuana that was seized and which formed the basis of count 130, which Sandoval pleaded guilty to, and which, under the guidelines, would equate to a base offense level of 26, with a criminal history category II, and would result in a guideline sentencing range of 63 to 78 months.

was 500 pounds or 226.8 kilograms and was limited to activities arising out of events which took place between January 10-16, 1996, as set forth in the superceding indictment. Sandoval argued that his plea was not knowing as he had been advised by counsel that the sentencing range applicable would result in a much lower sentence such as more near the statutory minimum of five years imprisonment. Simply put, Sandoval argued: "[t]he fact that the Defendant did not have the information that the PSR ultimately used to determine his sentence creates a shadow over any plea entered." (Document No. 4391, p. 5). The Government opposed Sandoval's attempts to withdraw his guilty plea. (Document No. 4444).

Sandoval was sentenced on July 20, 2001. (Document No. 4450, Transcript of Sentencing Hearing, Document No. 4514). In connection with Sandoval's sentencing, Judge Harmon first addressed Sandoval's Motion to Withdraw his Guilty Plea and, in that context, found no merit to Sandoval's ineffectiveness of counsel claim, and further found no legal or factual basis to support the withdrawal of Sandoval's guilty plea.

> Mr. Courtney: Over the course of those two years, information has come to light that he is now being sentenced on. And that's our argument, that I couldn't —I certainly could not have advised him what was the potential of the sentencing guidelines. I'm placed in a position to explain the guidelines to a client who has no idea what they are. And so, I go through, based upon the information that I have, what is the potential, what's the possibility, after representing for a year and a half, two years, a protracted case, lots of information.
>
> To boil that down into this is what I think. Not everything the information afterwards that almost triples the sentence, or the potential sentence of the guidelines available to the Court, from what his attorney thought or what he thought. An argument —.
>
>         *                *                *
>
> The Court: Because I told him, as I tell everyone, "Here's the maximum amount of time you can get."

8

&ast;     &ast;     &ast;

And I'm convinced was the time and now, he [knew] that was the outside limit, and you told him that was only an estimate.

Mr. Courtney:  Absolutely.  That 5 to 40 was the range.  I am not arguing that point with the Court.  Absolutely.  I told him that, the Court told him that, so—

The Court:  So then he could not have thought that it was a guarantee that the estimate you gave him was what he was going to get.  He couldn't have thought that.

&ast;     &ast;     &ast;

All right.  Your estimate was way off because you didn't know everything, Mr. Sandoval, however did know a lot more than you did, and he also knew how much time he could possibly get.

&ast;     &ast;     &ast;

Mr. Powers:  Your Honor, the defendant is only required to know that he could get up to 40 years.  Anything else is kind of gravy.  He doesn't have to know that.  All he needs to know is the maximum sentence.  Your Honor advised him of the maximum sentence.

If his attorney advised him that he thinks he might get between X amount and X amount and it turns out that's not the case, that doesn't make a bit of difference.  That's not a requirement.  Rule 11 requires that the defendant be aware of the maximum possible sentence, and I'm confident he will be sentenced to something substantially less than the maximum possible sentence.  So we have complied with Rule 11, the 20 minutes or so that we've been here arguing about whose predictions are correct and what counsel knows, are just plain immaterial; it doesn't matter.  The only thing [that] matters is he knows what the maximum sentence is in the nature of the charges and so on and so forth.  Counsel concedes he knows that; so we need to move on.  There's been no showing.

&ast;     &ast;     &ast;

The Court:  Okay.  If that's your argument, I do not find it has any merit because not only did he know what his potential sentence was, he knew all information concerning what his conduct was, not just the conduct that was recited the morning or the afternoon he made his plea, but also all the things that he had done for all the years he was involved in this enterprise.  So I do not find that your argument

9

is a persuasive argument, and I'm denying your motion to withdraw the plea.

*    *    *

Mr. Courtney: And I have to back up. And here's the question. It is a verified motion that I filed, verified by my client as an officer of the Court, I filed it. I'd ask the Court to take note of that and take that in support of the motion to withdraw; secondly, if —and it backs us back up. It isn't necessary for me to testify to support it, if my proffer to the Court is not sufficient—

The Court: Your proffer is perfectly sufficient.

*    *    *

The basis of your motion is not that you're ineffective. There's another basis for your motion. We have talked about that, we've talked about both of those. I have found that you were not ineffective. You were not ineffective. I've also looked at your reasoning behind – your belief that he should be able to withdraw his plea of guilty, and I have rejected that saying there is not good cause for his withdrawing his plea of guilty; therefore, that's the basis of my denying it. So I don't believe it's necessary for you to testify or your client to testify. (Transcript of July 20, 2001, Sentencing Hearing, Document No. 4514, pp. 18-22, 24).

Next, Judge Harmon overruled Sandoval's objections to the PSR (Document No. 4514, pp. 28-44) and Sandoval was sentenced to 262 months imprisonment, to be followed by a five year term of supervised. Also, the Court imposed a special assessment of $50. (Document No. 4450, Transcript of Sentencing Hearing, Document No. 4514 p. 49). Judgment was entered on July 30, 2001. (Document No. 4478). Thereafter, Sandoval appealed his conviction and sentence to the Fifth Circuit Court of Appeals. The Fifth Circuit, unpersuaded by Sandoval's arguments, affirmed his conviction on June 18, 2002. (Document Nos. 4892, 4893). The Fifth Circuit wrote:

Zaragosa Sandoval appeals his conviction and sentence following his guilty plea for possession with intent to distribute marijuana in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B).

10

Sandoval first argues that his guilty plea was rendered invalid because his trial counsel rendered ineffective assistance in estimating the sentence he would receive under the Sentencing Guidelines. An erroneous estimate by counsel as to the length of an expected sentence is not necessarily indicative of ineffective assistance. *Beckham v. Wainwright*, 639 F.2d 262, 265 (5th Cir. 1981). Because Sandoval has not demonstrated that trial counsel acted unreasonably in estimating Sandoval's sentence under the guidelines with the information available at the time of the plea, Sandoval cannot prevail on his ineffective assistance claim. *See Strickland v. Washington*, 466 U.S. 668, 687-94 (1984). To the extent that Sandoval challenges counsel's effectiveness, we affirm the judgment of the district court.

Sandoval next argues that Federal Rule of Criminal Procedure 32(c)(2), his right to due process and his confrontation rights were violated when he was denied discovery and Jencks Act material regarding allegedly disputed sentence facts found in the pre-sentence report. He also contends that his sentence was violative of *Apprendi v. New Jersey*, 530 U.S. 466 (2000) because the factors used to enhance his sentence were not presented to a jury and proven beyond a reasonable doubt. He concedes that his *Apprendi* argument is foreclosed by our precedent in *United States v. Clinton*, 256 F.3d 311, 314 (5th Cir), *cert. denied*, 122 S.Ct. 492 (2001), but he raises the issue in an attempt to preserve it for further review.

As part of his plea agreement, Sandoval waived his right to appeal his sentence. Because the record shows that Sandoval's appeal waiver was valid, *see United States v. Portillo*, 18 F.3d 290, 292 (5th Cir. 1994), the portion of Sandoval's appeal relating to his sentence is dismissed. *See United States v. Martinez*, 263 F.3d 436, 438 (5th Cir. 2001). (Document No. 4893).

Sandoval did not file a petition for writ of certiorari with the United States Supreme Court. The 90 day period for filing a petition for writ of certiorari with the Supreme Court expired on September 16, 2002. SUP.CT.R.13 ("The time to file a petition for writ of certiorari runs from the date of entry of the judgment or order sought to be reviewed.") As such, Sandoval's judgment and conviction became final on September 16, 2002, the ninetieth day on which Sandoval could have timely filed for review by the Supreme Court.

On September 18, 2003, Sandoval signed, dated and delivered his § 2255 motion for mailing. Sandoval's § 2255 motion was stamped filed by the Clerk's office on September 22,

11

2003.  (Document No. 5197).  The Government has answered and has moved to dismiss the instant action as time-barred.  (Document Nos. 5225).  Sandoval has responded to the Government's Motion to Dismiss. (Document No. 5238).  In addition, on October 26, 2004, Sandoval filed a Motion for Leave to Amend/Supplement § 2255 motion (Document No. 5425), and memorandum in support thereof (Document No. 5426), in which Sandoval moves to amend/supplement his previously filed § 2255 motion to challenge his sentence based on the holding in *Blakely v. Washington*, 124 S.Ct. 2531 (2004).[4]  According to Sandoval, he should be allowed to amend his § 2255 motion to argue that his sentence was unconstitutional in light of *Blakely*.  The Government has responded (Document No. 5422) and opposes Sandoval's proposed amendment.  This § 2255 proceeding is ripe for ruling.

## II.  Motion to Amend/Supplement § 2255

On October 26, 2004, Sandoval filed a Motion for Leave to Amend/Supplement § 2255 motion and Memorandum in Support (Document Nos. 5425, 5426), in which he requests that he be allowed to argue that his sentence enhancement was unconstitutional in light of *Blakely*.

Sandoval's Motion for Leave to Amend/Supplement § 2255 (Document No. 5425), which was filed on October 26, 2004, falls outside the one year statute of limitations set by the Antiterrorism and Effective Death Penalty Act (AEDPA) in § 2255.

Federal Rule of Civil Procedure 15 governs amended and supplemental pleadings, and the

---

[4] Because of the intervening decision by the United States Supreme Court in *United States v Booker*, ___U.S. ___, 125 S.Ct. 738 (2005), which applied *Blakely* to the Federal guidelines, the Court refers to both decisions as *Blakely/Booker*.

law is clear that Rule 15 applies to amendments of § 2255 motions. *See United States v. Saenz*, 282 F.3d 354. 356 (5th Cir. 2002) ("Every circuit that has addressed this issue agrees the [AEDPA's] one year statute of limitations does not render Rule 15 inapplicable to federal habeas proceedings."). "Under Fed.R.Civ.P. 15(c), a district court may in its discretion, permit an amendment which clarifies or amplifies a claim or theory in a timely filed § 2255 petition after AEDPA's one year statute of limitations has expired." *United States v. Thomas*, 221 F.3d 430, 433-434 (3rd Cir. 2000). Conversely, an amendment under Rule 15(c) should not be allowed where the movant seeks to add an entirely new claim or new theory of relief. *Id.* Because *Blakely/Booker* is a new theory of relief, Sandoval is not entitled to amend his § 2255 motion under Rule 15.

Moreover, even assuming that Sandoval's claim under *Blakely/Booker* related back to his § 2255 motion, that motion was untimely filed. Even assuming further that Sandoval's § 2255 motion had been timely filed, Sandoval should not be allowed to amend his original § 2255 motion because *Blakely/Booker* does not apply retroactively to cases on collateral review. As a result, the proposed amendment would be futile.

Sandoval argues that the district court's sentencing determination is contrary to the Supreme Court's decision in *Blakely/Booker* because the Court, and not a jury, enhanced his sentence. In *Blakely*, the Supreme Court invalidated the State of Washington's sentencing scheme, whereby a judge could possibly sentence a defendant to a punishment beyond a statutory range on the basis of judicially determined facts. *Id.* at 2538. In doing so, the Supreme Court applied the rule in *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), which requires that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed

13

statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." The Supreme Court in *Blakely* expressly declined to state whether its decision applied to the Federal Sentencing Guidelines. *Id.*

The Supreme Court, in its intervening decision, *United States v. Booker,* __U.S.___, 125 S.C.t. 738 (2005), extended its holding in *Blakely* to the Federal Sentencing Guidelines, and concluded that there was "no distinction of constitutional significant between the Federal Sentencing Guidelines" and the state sentencing scheme at issue in *Blakely* and, in keeping with its earlier decision in *Apprendi*, stated: "Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Id.,* 125 S.Ct. at 756. Because *Blakely* and *Booker* were decided after Sandoval's conviction in the instant case became final, it must be determined as an initial matter whether *Blakely/Booker* should be retrospectively applied. The Supreme Court has not stated whether the rule announced in *Blakely* and *Booker* apples retroactively to cases on collateral review. Neither has the Fifth Circuit yet addressed this issue.

New constitutional rules of criminal procedure are applicable to cases on direct review, *Griffith v. Kentucky*, 479 U.S. 314, 328 (1987), but are generally not applicable to cases on collateral review. *Teague v. Lane*, 489 U.S. 288, 305-310 (1989). That is because, in the context of collateral review, "[application of constitutional rules not in existence at the time a conviction [becomes] final seriously undermine the principle of finality which is essential to the operation of our criminal justice system. Without finality, the criminal law is deprived of much of its deterrent effect." *Teague*, 489 U.S. at 309.

14

When the Supreme Court announces a "new rule" as it expressly stated it was doing in *Booker*, "the new rule applies to all criminal cases still pending on direct review." *Schriro v. Summerlin*, ___ U.S. ___, 124 S.Ct. 2519, 2522-2523 (2004). However, when a conviction is final, such as in Sandoval's case, the "new rule" does not automatically apply. Rather, the three step process announced by the Supreme Court in *Teague* is employed to determine whether a new constitutional rule of criminal procedure is to be applied retrospectively to cases on collateral review. *Beard v. Banks*, 124 S.Ct. 2504, 2510 (2004); *O'Dell v. Netherland*, 521 U.S. 151, 156 (1997).

*Teague* requires a three step analysis. First, it must be determined when the petitioner's conviction became final. *Beard*, 124 S.Ct. at 2510. Second, if the conviction became final prior to the decision the petitioner seeks benefit of, the court must determine whether the decision relied upon by the petitioner sets forth a "new" constitutional rule of criminal procedure. *See Beard,* 124 S.Ct. at 2510. According to the Supreme Court, a "new" rule is a rule that "breaks new ground" or "if the result was not *dictated* by precedent existing at the time the defendant's conviction became final." *Teague*, 489 U.S. at 301. Third, if the rule to be applied is "new", the court then considers whether one of the two narrow exceptions to *Teague* applies: (1) where the rule "places 'certain kinds of primary, private individual conduct beyond the power of the criminal lawmaking authority to proscribe'" *Teague*, 489 U.S. at 311 (quoting *Mackey v. United States,* 401 U.S. 667, 692 (1971)), and 2) where the new rule is a watershed rule of criminal procedure which is implicit in the concept of ordered liberty and which affects "the fundamental fairness and accuracy of the criminal proceeding." *O'Dell*, 521 U.S. 151, 157 (1997) (quoting *Graham v. Collins*, 506 U.S. 461, 478 (1993)).

15

Applying the three step process to this case, the undersigned Magistrate Judge concludes that *Teague* bars application of the new rule set forth in *Blakely/ Booker*.  First, Sandoval's conviction became final on September 16, 2002, prior to the United States Supreme Court decisions in *Blakely* on January 24, 2004, and *Booker* on January 12, 2005.

Second, the *Blakely/Booker* decisions set forth a "new" constitutional rule of criminal law. According to *Teague*, "a case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conduct became final." *Teague*, 489 U.S. at 301.  As such,

> We must therefore assay the legal landscape as of [September 2002] and ask "whether the rule later announced in [Blakely] and [Booker] was *dictated* by then-existing precedent – whether, that is, the unlawfulness of [Sandoval's] conviction was apparent to all reasonable jurists."

*Beard*, 124 S.C.t at 2511 (quoting *Lambrix v. Singletary*, 520 U.S. 518, 527-28 (1997)).  Here, at the time of Sandoval's sentencing, the case law as it existed would not have directed a finding that Sandoval's sentence under the Federal Sentencing Guidelines violated the Sixth Amendment's right to a jury trial.    Moreover, it is undisputed that *Blakely/ Booker* advanced a new understanding of "statutory maximum" for purposes of imposing sentence:  "[T]he relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings." *Blakely*, 124 S.Ct. at 2537 (emphasis in original).  Before *Blakely*, every federal circuit court of appeals had concluded that *Apprendi* did not invalidate the Sentencing Guidelines or sentencing enhancements based on judicial fact findings so long as the sentence imposed was within the statutory maximum as determined by the United States Code.  *See e.g., United States v. Goodine,* 326 F.3d 26 (1st Cir. 2003); *United States v. Luciana,* 311 F.3d 146 (2nd Cir. 2002); *United States v. DeSumma,* 272

16

F.3d 176 (3rd Cir. 2001); *United States v. Kinter,* 235 F.3d 192 (4th Cir. 2000); *United States v. Randle,* 304 F.3d 372 (5th Cir. 2002); *United States v. Helton,* 349 F.3d 295 (6th Cir. 2003); *United States v. Johnson,* 335 F.3d 589 (7th Cir. 2003); *United States v. Piggie,* 316 F.3d 789 (8th Cir. 2003); *United States v. Toliver,* 351 F.3d 423 (9th Cir. 2003); *United States v. Mendez-Zamora,* 296 F.3d 1013 (10th Cir. 2002); *United States v. Sanchez,* 269 F.3d 1250 (11th Cir. 2001; *United States v. Fields,* 251 F.3d 1041 (D.C.Cir. 2001). *Blakely* and *Booker*, in contrast, made clear that the statutory maximum "is the maximum sentence a judge may impose *solely on the basis of facts reflected in the jury verdict or admitted by the defendant,"* *Blakely,* 124 S.Ct. at 2537 (emphasis in original).[5] As such, the rule in *Blakely/ Booker* that Sandoval would have this Court apply was not dictated or compelled by *Apprendi* and its progeny, and is a "new rule" of the type barred from retroactive application by *Teague.*

Third, *Blakely/Booker* does not fit into one of the two narrow exceptions set forth in *Teague*. The first exception to *Teague* applies to a new rule that "places certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe." *Teague*, 489 U.S. at 307 (quotation omitted). Because *Blakely/Booker* concerns the manner in which a defendant's sentence is determined, the new rule announced in *Blakely/ Booker* is not implicated by *Teague*'s first exception.

With respect to *Teague*'s second exception, the Supreme Court in *Beard* wrote:

The second exception is for watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding. We have repeatedly

---

[5] Indeed, with respect to the unexpected consequence of *Blakely*, Justice O'Connor in her dissent noted: "there is no map of the uncharged territory blazed by today's unprecedented holding." *Blakely*, ___ U.S. at ___, 124 S.Ct. at 2547 n.1.

emphasized the limited scope of the second *Teague* exception, explaining that it is clearly meant to apply only to a small core of rules requiring observance of those procedures that ... are implicit in the concept of ordered liberty. And, because any qualifying rule would be so central to an accurate determination of innocence or guilt [that it is] unlikely that many such components of basic due process have yet to emerge, it should come as no surprise that we have yet to find a new rule that falls under the second *Teague* exception.

*Beard*, 124 S.Ct. at 2513-14 (internal quotations and citations omitted).  Given that the Supreme Court has previously held that a change in the law requiring that juries, rather than judges, make the factual findings on which a sentence is based did not rise to the level of implicating fundamental fairness and as such did not announce a watershed rule of criminal procedure, *see Schriro*, 124 S.Ct. at 2524-26[6], and given that the Supreme Court has never held that a new

---

[6] *Schriro* concerned the allocation of fact finding responsibility between the judge and the jury and held that the decision in *Ring v. Arizona,* 536 U.S. 584 (2002), which invalidated judicial fact finding in death penalty cases under the rule announced in *Apprendi*, was a procedural rule not retroactive on collateral review.  Because the Arizona statute at issue in *Schriro* required proof beyond a reasonable doubt, the Supreme Court did not address the retroactive application of *Apprendi*'s holding that sentencing facts necessary to increase a maximum statutory sentence be found beyond a reasonable doubt rather than by a preponderance of the evidence.  *See Summerlin,* 124 S.Ct. at 2522 n. 1.

With respect to the burden of proof for sentencing facts, the new procedures required by *Blakely/Booker* do not "implicat[e] the fundamental fairness and accuracy" of criminal proceedings.  *Schriro,* 124 S.Ct. at 2523.  For example, the maximum term of imprisonment for a sentence is set by the United States Code.  With respect to judicial fact-finding, the Court relies on a presentence report, and the defendant is given an opportunity to object to the facts contained in the presentence report.  In addition, even though after *Booker* the Guidelines are no longer mandatory, *Booker* states that the Guidelines should still taken into consideration by the Judge imposing sentence, and that the preponderance of the evidence standard applies.  *See U.S.S.G. § 6A2.3, Comment.* ("The Commission believes that use of a preponderance of the evidence standard is appropriate to meet due process requirements and policy concerns in resolving disputes regarding application of the guidelines to the facts of a case.").

With respect to sentencing in light of *Booker,* the Fifth Circuit Court of Appeals in *United States v. Mares,* 402 F.3d. 511 (5th Cir. 2005) elaborated upon the procedures to be followed at sentencing post *Booker*.  According to the Fifth Circuit, "a sentencing court must still carefully consider the detailed statutory scheme created by the [Sentencing Reform Act] and the

criminal procedural rule falls into the second *Teague* exception,[7] there is no basis upon which to

conclude that *Blakely/ Booker*'s new rule falls within the second exception to *Teague. See, e.g.,*

*King v. Jeter,* (No. 4:04-CV-0600-D) 2005 WL 195446 (N.D. Tex. Jan 27, 2005); *United States*

*v. Wenzel,* ___F.Supp. 2d,___, 2005 WL 579064 (W.D.Pa. Mar 2, 2005); *Rucker v. United*

*States*, 2005 WL 331336, at *1, (No. 2:04-CV-00914PCG)(D. Utah Feb. 10, 2005); *Gerrish v.*

*United States,* 353 F.Supp. 2d. 95 (D.Me. Jan 25, 2005); *United States v. Johnson*, 353

F.Supp.2d 656 (E.D. Va. Jan 21, 2005); *United States v. Gill,* (No. Civ. 04-3365-SAC, Crim.

00-401-01 SAC), 2005 WL 475375 (D.Kan. Feb. 28, 2005); *Hamdani v. United States,* (No. Civ.

---

Guidelines, which are designed to guide the judge toward a fair sentence while avoiding serious
sentence disparity."  As such, the "[t]he guideline range should be determined in the same manner
as before *Booker/Fanfan*" and "*Booker* contemplates, that with the mandatory use of the
Guidelines excised, the Sixth Amendment will not impede a sentencing judge from finding all facts
relevant to sentencing."  According to the Fifth Circuit:  "[i]f the sentencing judge exercises her
discretion to impose a sentence within a properly calculated Guideline range, in our
reasonableness review we will infer that the judge has considered all the factors for a fair sentence
set forth in the Guidelines.  Given the deference due the sentencing judge's discretion under the
*Booker/Fanfan* regime, it will be rare for a reviewing court to say such a sentence is
'unreasonable.'"
    In the context of a § 2255 motion, because *Booker* instructs courts to consider the
Guideline sentencing ranges based on a preponderance of the evidence standard, it cannot be said
that sentences calculated in that manner necessarily "implicate[] the fundamental fairness and
accuracy of the criminal proceeding."  *Schriro*, 124 S.Ct. at 2523.  Here, Sandoval's guideline
sentencing range was enhanced only after a finding by a preponderance of the evidence by the
Court that Sandoval was accountable for the quantity of marijuana contained in the PSR.
Sandoval was given the opportunity to challenge these facts, which he did, and post-*Booker*,
Judge Harmon would have considered the same facts in imposing sentence.  It is pure conjecture
and speculation that Sandoval's sentence would have been calculated differently under the
advisory guidelines, than was actually found by Judge Harmon by a preponderance of the
evidence under the mandatory guidelines.

    [7] According to the Supreme Court in *Beard*, *Gideon v. Wainwright*, 372 U.S. 335
(1963), which established the affirmative right to counsel in felony cases *might* constitute a
watershed rule that would satisfy *Teague*'s second exception.  *Beard*, 124 S.Ct. at 2514.
(emphasis added).

A 04-3332(DGT))  ___F.Supp. 2d, ___, 2005 WL 419727, at *2 (E.D.N.Y. Feb. 22, 2005); *In re Anderson,* 396 F.3d 1336, 1339 (11th Cir. 2005); *McReynolds v. United States,* 397 F.3d 479, 481 (7th Cir. 2005); *Humphress v. United States,* 398 F.3d 855 (6th Cir. 2005)*; Varela v. United States*, 400 F.3d. 864, 868 (11th Cir. 2005), *United States v. Price*, 400 F.3d. 844, 845 (10th Cir. 2005); *Guzman v. United States*, (No. 03-2446-pr), ___F.3d.___, 2005 WL 803214 (2nd Cir. April 8, 2005).

Because *Teague* bars the retrospective application of *Blakely/Booker* in collateral § 2255 proceedings, Sandoval's Motion to Amend/Supplement his § 2255 motion to assert a *Blakely/Booker* claim should be denied as futile. *Foreman v. Davis*, 371 U.S. 178, 182 (1962)(stating futility as proper ground for denying amendment).  Therefore, the Magistrate Judge RECOMMENDS that Movant's Motion for Leave to Amend/Supplement § 2255(Document No. 5425) be DENIED as futile.

## III.  Issues Presented

In his § 2255 motion, Sandoval alleges ineffective assistance of counsel.  According to Sandoval he was denied his right to effective assistance of counsel at the time of his guilty plea due to his attorney's representations regarding the sentence he would receive if he pleaded  guilty. Sandoval maintains that he believed, based on counsel's representations, that he was going to receive a sentence of no more than seven years and that the Rearraignment proceeding was a mere formality.  In addition, Sandoval alleges his due process rights were violated at his sentencing hearing when the court declined to allow him to withdraw his plea and failed to appoint him new counsel based on an alleged conflict of interest.  Sandoval next alleges that the court abused its

discretion in refusing to allow him to withdraw his guilty plea without first personally addressing him regarding the basis of the motion, and by failing to hold a "Garcia" Hearing.   Finally, Sandoval alleges ineffective assistance of counsel on appeal due to an alleged conflict of interest.

## IV. Discussion

### A. Sandoval's  § 2255 motion is time barred

The United States argues that Sandoval's § 2255 Motion to Vacate, Set Aside or Correct Sentence should be dismissed because it is time barred.  On April 24, 1996, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") was enacted.  With the enactment of AEDPA, 28 U.S.C. § 2255 now specifically provides for a one-year statute of limitations:

A 1-year period of limitation shall apply to a motion under this section.   The limitation period shall run from the latest of–

(1)     the date on which the judgment of conviction becomes final;

(2)     the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from filing by such governmental action;

(3)     the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4)     the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255.  Because Sandoval filed the instant motion after the effective date of AEDPA, the provisions of the statute apply.

21

Here, Sandoval's conviction became final for purposes of § 2255(1) on September 16, 2002, the last day on which he could have filed a petition for writ of certiorari with the United States Supreme Court. *See* Sup.Ct.R. 13.1 ("a petition for certiorari … is timely when it is filed … within 90 days after entry of the judgment'); *Griffith v. Kentucky*, 479 U.S. 314, 321 n. 6 (1987 ("By 'final,' we mean a case of which a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied."); *United States v. Gamble*, 208 F.3d 539 (5th Cir. 2000) (§ 2255's statute of limitations begins to run when the time for filing a petition for certiorari expires). The one-year limitation period began to run on September 16, 2002, the day his conviction became final, and expired one year later on September 16, 2003.

A § 2255 motion is deemed filed at the time it is delivered to prison officials for mailing. *United States v. Patterson,* 211 F.3d 927, 930 (5th Cir. 2000) (citing *Spotville v. Cain*, 149 F.3d 374, 377 (5th Cir. 1998)). Here, Sandoval's § 2255 motion shows that it was placed for mailing on September 18, 2003, and was received and stamped filed on September 22, 2003, more than two days after the expiration of the one-year period. Under these circumstances, Sandoval's motion is untimely under § 2255(1), and is subject to dismissal absent a showing that an alternate date for commencement of the limitations period should be applied under § 2255(2)-(4) or that the limitations period should be equitably tolled.

None of the alternate provisions for the commencement of the limitations period applies. Sandoval has not alleged that he was in any way impeded from filing a timely § 2255 motion. To the contrary, Sandoval maintains that his motion is timely given that it was filed three months after the Fifth Circuit issued its decision. However, the time for seeking review by the Supreme

22

Court is *90 calendar days,* not three months. To the extent Sandoval attempts to allege a claim that is based on a right newly recognized by the Supreme Court, because *Blakely/Booker* has not been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review, this exception for commencement of the limitations period does not apply. Finally, Sandoval has not shown that the facts underlying his claims could not have been discovered through the exercise of due diligence by the time his conviction was final.

As for the applicability of equitable tolling, rare and exceptional circumstances may warrant the application of equitable tolling principles to a late filed § 2255 motion to vacate, set aside or correct sentence. *United States v. Patterson,* 211 F.3d 927 (5th Cir. 2000). Equitable tolling, however, is not available if the petitioner does not act diligently in attempting to meet the one year limitations deadline. *Coleman v. Johnson,* 184 F.3d 398, 402 (5th Cir. 1999), *cert. denied,* 529 U.S. 1057 (2000). In addition, the Fifth Circuit has approved of equitable tolling in very limited circumstances, "'principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights.'" *Fierro v. Cockrell,* 294 F.3d 674, 682 (5th Cir. 2002) (quoting *Coleman,* 184 F.3d at 402); *See also Davis v. Johnson,* 158 F.3d 806, 811 (5th Cir. 1999), *cert. denied*, 526 U.S. 1074 (1999) (Inconsistent ruling by the district court constituted exceptional circumstances which warranted the application of equitable tolling principles); *United States v. Patterson,* 211 F.3d 927 (5th Cir. 2000) (Rare and exceptional circumstances existed to warrant equitable tolling where the Movant was under mistaken impression as to filing deadline, where that mistaken impression was furthered by the District Court); *United States v. Wynn,* 292 F.3d 226, 230 (5th Cir. 2002) (remanding case for rehearing on equitable tolling where the petitioner alleged "he was deceived by his attorney

23

into believing that a timely § 2255 motion had been filed on his behalf"). In contrast, the Fifth Circuit has disapproved of the application of equitable tolling for circumstances which are "garden variety claims of excusable neglect." *Lockingbill v. Cockrell,* 293 F.3d 256, 265 (5th Cir. 2002).

Here, given the absence of any facts in the record that would constitute a rare or exceptional circumstance to warrant equitable tolling, and given that Sandoval's failure to meet the one year limitations period appears to have the result of Sandoval's miscalculation of the date his conviction became final, equitable tolling of the limitations period is not available.

## V. Conclusion and Recommendation

Based on the foregoing, and the conclusion that Sandoval's § 2255 motion was not timely filed and that equitable tolling is not available, it is

RECOMMENDED that the Government's Motion to Dismiss (Document No. 5225) be GRANTED, that Movant Zaragosa Sandoval's § 2255 Motion to Vacate, Set Aside or Correct Sentence (Document No.5197) be DENIED, that this § 2255 proceeding be DISMISSED as time barred, and that Movant's Motion to Amend/Supplement his § 2255 Motion (Document No. 5425) be DENIED as futile.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record. Within 10 days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), Fed.R.Civ.P. 72(b), and General Order 80-5, S.D. Texas. Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir. 1982), *cert. denied*, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d 404

(5th Cir. 1982) (en banc).  Moreover, absent plain error, failure to file objections within the ten

day period bars an aggrieved party from attacking conclusions of law on appeal.  *Douglass v.*

*United Services Automobile Association*, 79 F.3d 1415, 1429 (5th Cir. 1996).  The original of any

written objections shall be filed with the United States District Clerk, P.O. Box 61010, Houston,

Texas 77208.

Signed at Houston, Texas, this 26th day of April          , 2005.


FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE

25